J-A22027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DERRICK WAYNE MOYER | |
| Appellant | No. 161 MDA 2016 |

Appeal from the Judgment of Sentence September 24, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000244-2015

BEFORE:    GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 10, 2016**

Appellant, Derrick Wayne Moyer, appeals from the judgment of sentence entered following a jury trial in the Lycoming County Court of Common Pleas. Moyer argues that the evidence adduced at trial was insufficient to support his convictions, that the verdict was against the weight of the evidence, and that the sentence imposed was manifestly excessive. We affirm.

In January 2015, Moyer was arrested and charged with intimidation of a witness,[1] criminal use of a communication facility,[2] and possessing an instrument of crime.[3] At trial, the Commonwealth presented the following

_____

[1] 18 Pa.C.S.A. § 4952(a)(1).
[2] 18 Pa.C.S.A. § 7512.
[3] 18 Pa.C.S.A. § 907(a).

evidence. The victim, Gage Wood, testified that he knew Moyer prior to the alleged offenses because the two had been previously housed together at Lycoming County Prison. In the winter of 2014, Wood was a witness for the Commonwealth in a murder case against Da'Ran Sears. Wood planned to present testimony at the murder trial concerning "incriminating evidence of what [Sears] told [Wood] at the prison regarding the murder case." Notes of Testimony, 9/15/15, at 12 ("N.T."). Wood indicated that Moyer was friends with Sears.

On January 18, 2015, Moyer placed a message on Wood's public Facebook page referring to Wood as a rat. Wood deleted the message and privately messaged Moyer. The ensuing conversation, unedited, was as follows.

Wood: You can be next

Moyer: What I will get Yuh fucked up

Wood: Ya we will ser

Wood: See

Wood: You got me Fucked up apparently

Moyer: Nigga yu a bitch cuz

Wood: But since You insist, y'all both can enjoy the witness intimidation and tampering charges.

Wood: I'm saying you can slide through

Moyer: Bitch I'm on house arrest but where u stay at

Moyer: Aye yo bitch where you live

Wood: Port

Moyer: Yu rat

Moyer: What street rat

Wood: Nice I'll let Harry know how you are

Moyer: Shut up bitch

Wood: Sixth

Wood: Ave

Moyer: Address

Wood: 911 sixth

Wood: Corner of park

Wood: Way

Moyer: Grier nigga

Wood: Perfect slide, I'm white though

Moyer: IMA leave yu alone before Yuh hop on my case yu fukcin rat yu told on my may but slide thru Grier whenever

Moyer: Yeah nigga just let me kno when yu gonna slide

Wood: That sucks, wasn't my man's that's all that matters to me

Wood: don't worry I won't hop on your case, you just caught a new case dumbass

Wood: They on the way. Second or third house?

Trial Court Opinion, 1/8/16, at 4-5.

Wood testified that he sent the message "[Y]ou can be next" to let Moyer know that he would report Moyer for harassing and intimidating him.

Further, Wood's reference to "Harry" was known to both parties as the intensive supervised bail officer on Moyer's case. Wood ultimately told law enforcement officers about Moyer's messages on January 23, 2015, once he "processed the severity of what could happen." N.T., 9/15/15, at 22.

Once Wood reported the messages, Agent Stephen Sorage spoke to Moyer. Agent Sorage testified that Moyer indicated that he knew Wood had provided statements against Sears, but that he did not know if Wood "was still telling." *Id*. at 34. Agent Sorage asked Moyer, "if you knew that [Wood] was telling, but didn't know that [Wood] was still telling, why would you post what you posted . . . if it wasn't to keep [Wood] from telling?" *Id*. Agent Sorage responded to Moyer's subsequent silence by asking, "am I right or wrong?" *Id*. Moyer responded, "right." *Id*. Following this conversation, Agent Trent Peacock, asked Moyer about the messages Moyer sent to Wood. Moyer admitted to Agent Peacock that he initiated the messages by calling Wood a rat, and that he used his cellular telephone to send the messages to Wood through Facebook.

Moyer did not present any witnesses or offer any testimony on his behalf. The jury convicted Moyer of all three charges. On September 24, 2015, the trial court sentenced Moyer to 60 to 120 months' incarceration for intimidation of a witness, and a consecutive term of 12 to 24 months' incarceration for criminal use of a communication facility. Both sentences fell within the aggravated range of the sentencing guidelines. The trial court did not impose further penalty for Moyer's possessing an instrument of crime

conviction. Following the denial of post-sentence motions, this timely appeal followed.

Moyer presents the following issues for our review, renumbered for ease of disposition.

I.  Whether the lower court abused its discretion by imposing a manifestly excessive sentence of 6-12 years.

II. Whether the Commonwealth presented sufficient evidence with respect to all the charges.

a. Whether the Commonwealth failed to produce sufficient evidence that [Moyer's] comment on Facebook, calling the victim a "rat" was [intended] to keep the victim from refraining or informing or reporting any information, document or thing relating to the commission of the crime with respect to Da'Ran Sears'[s] homicide case.

b. Whether there was sufficient evidence to sustain a conviction for criminal use of a communication facility and possession of an instrument of a crime, as no crime was committed.

III. Whether the verdict was against the weight of the evidence with respect to all counts, as the verdict was so contrary to the evidence, so as to shock one's sense of justice.

a. Whether the verdict was against the weight of the evidence with respect to intimidation of a witness.

b. Whether the verdict was against the weight of the evidence with respect to criminal use of a communication facility and possessing an instrument of crime.

Appellant's Brief, at 4.

First, Moyer challenges the discretionary aspects of his sentence. Moyer preserved his argument concerning the discretionary aspects of his sentence through a post-sentence motion.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." ***Id***. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." ***Id***. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." ***Id***. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See id***. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id***. (citation omitted); ***see also*** Pa.R.A.P. 2119(f). In the present

case, Moyer's appellate brief contains the requisite Rule 2119(f) concise statement.

First, Moyer contends in his Rule 2119(f) statement that the trial court abused its discretion by sentencing him in the aggravated statutory range, thereby creating a manifestly excessive and unreasonable sentence. While the fact that a sentence is within the statutory limits does not preclude appellate review, a "bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim." *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012) (citation omitted). Here, like in *Fisher*, Moyer does not cite a specific provision of the sentencing code or a fundamental norm of sentencing that he alleges the trial court violated. Without either, Moyer's assertion of excessiveness does not raise a substantial question. *See id*. Accordingly, Moyer's first challenge to the discretionary aspects of his sentence is without merit.

Additionally, Moyer argues in his Rule 2119(f) statement that the trial court abused its discretion by fashioning a sentence without fully considering his lack of criminal history, age, and circumstances. However, this Court has repeatedly held that the mere assertion that the sentencing court failed to give adequate weight to sentencing factors of record, without more, does not raise a substantial question for appellate review. *See*, *e.g.*, *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014). Because Moyer fails to

allege anything other than the trial court's failure to adequately consider factors of record, he has failed to raise a substantial question for review. Thus, his second challenge to the discretionary aspects of his sentence also fails.

In his second issue on appeal, Moyer argues that the Commonwealth failed to present sufficient evidence to prove that he committed the crimes of intimidation of a witness, criminal use of a communication facility, and possession of instrument of crime. *See* Appellant's Brief, at 6, 9-12. Moyer contends that the Commonwealth only established that he wrote the word "rat" on Wood's Facebook wall. Moyer avers that, without additional evidence that he intended to intimidate Wood, he cannot be found to have intimidated a witness. Further, without his conviction for intimidation of a witness, Moyer contends that the Commonwealth would be unable to prove the crimes of criminal use of a communication facility or possession of an instrument of crime.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weight the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of

wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917-18 (Pa. Super. 2012)

(citation omitted; brackets in original).

The crime of intimidation of a witness is defined in relevant part as follows.

**Intimidation of Witnesses or Victims**

(a)  **Offense defined**.- A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(3). Further,

[A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, "*attempts*" to intimidate a witness or victim …. The trier of facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice …. The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Collington*, 615 A.2d 769, 770 (Pa. Super. 1992).

Based upon our review of the record, we agree with the trial court that the evidence is sufficient to find the offense of intimidation of a witness.

Here, Wood testified that he was planning to provide testimony against Sears in Sears's murder trial. Wood knew that Moyer was friends with Sears. Moyer knew that Wood was planning to testify against Sears and called Wood a "rat" twice in reference to Wood's planned testimony. Moyer repeatedly asked Wood where he lived. Further, when interviewed by police, Moyer admitted that he posted "rat" to Wood's Facebook wall in order to keep Wood from testifying against Sears.

The jury, as the trier of fact, was free to believe all, part, or none of the testimony presented by the witnesses. It is clear from the verdict that the jury found Wood's testimony credible. The contents and timing of Moyer's messages, together with the circumstances surrounding them and Wood's testimony, were sufficient for the jury to infer that Moyer intended to intimidate Wood in order to prevent him from testifying against Sears. Thus, Moyer's claim that there was insufficient evidence to support the charge of intimidation of witnesses or victims fails.

The offense of criminal use of a communication facility is defined as follows.

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause of facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

- 10 -

18 Pa.C.S.A. § 7512. Thus, to support a conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that

> (1) Appellant[] knowingly and intentionally used a communication facility; (2) Appellant[] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred … Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony."

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (internal citations omitted).

In order to prove possession of an instrument of crime, the Commonwealth must show that the defendant "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907. An instrument of crime is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d).

The Commonwealth proved, beyond a reasonable doubt, that Moyer knowingly and intentionally used a cellular telephone to post the message "rat" on Wood's Facebook wall and used his phone to privately message Wood. Further, Moyer was in possession of this cellular telephone at the time of his arrest. Because we found that Moyer's challenge to the sufficiency of the evidence in relation to his intimidation of a witness conviction fails, the Commonwealth has met its burden of showing that Moyer committed the underlying felony necessary for a conviction for criminal use of a

communication facility and possessing an instrument of crime. Thus, like his challenge to the sufficiency of the evidence for his intimidation of a witness conviction Moyer's challenges to his criminal use of a communication device and possessing an instrument of crime convictions also fail.

Finally, Moyer argues that his convictions were against the weight of the evidence. A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014) (citation omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotes and citations omitted).

To support his weight of the evidence claim, Moyer essentially reiterates his sufficiency of the evidence argument. **See** Appellant's Brief, at

- 12 -

7, 15-18. Moyer argues that the verdict "shocks one's sense of justice" and should not be allowed to stand. *See id*., at 7.

At trial, the Commonwealth presented evidence in the form of the testimony of Wood, Agent Sorage, and Agent Peacock, as well as the Facebook messages between Wood and Moyer. Moyer did not testify or call any witnesses on his behalf. Therefore, Moyer's guilt hinged on the jury's determination of the Commonwealth's witnesses' credibility and its interpretation of the Facebook messages. It is clear that the jury found the testimony of Wood, Agent Sorage and Agent Peacock credible, and concluded that Moyer's intention through the Facebook messages was to intimidate Wood and prevent him from testifying against Sears. We discern no abuse of discretion in the court's assessment of the jury's determinations related to the credibility of witnesses or the weight of evidence at trial. We cannot agree with Moyer that the trial court's guilty verdict "shocks one's sense of justice." Thus, we conclude that Moyer's final issue merits no relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016

- 13 -